# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIAZAR G.C.,[1] <br><br> Petitioner, <br><br> v. <br><br> MINGA WOFFORD, <br><br> Respondent. | Case No. 1:24-cv-01032-EPG-HC <br><br> ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner, represented by counsel, is a federal immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The parties have consented to the jurisdiction of a United States magistrate judge. (ECF Nos. 43, 47, 48.) For the reasons set forth herein, the petition for writ of habeas corpus is granted in part.

## I.

## BACKGROUND

Petitioner is a native and citizen of El Salvador. (ECF No. 1 at 8.[2]) In 1994, Petitioner migrated to the United States.[3] (Id. at 9.) Petitioner has been convicted of various offenses and

---

[1] The Court partially redacts Petitioner's name to mitigate privacy concerns, as requested by Petitioner and suggested by the Committee on Court Administration and Case Management of the Judicial Conference of the United States. See Memorandum Re: Privacy Concern Regarding Social Security & Immigration Opinions (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Page numbers refer to ECF page numbers stamped at the top of the page.

[3] Petitioner alleges that he received Temporary Protected Status ("TPS"). (ECF No. 1 at 9.) Respondent disagrees that Petitioner was admitted lawfully under TPS, which "is not granted to noncitizens who have

1  most recently was sentenced in June 2017 to an imprisonment term of seven years for forcible
2  rape of a child over fourteen. (ECF No. 1 at 9.)

3  Upon Petitioner's release from prison on December 22, 2021, Petitioner was issued a
4  final administrative removal order under 8 U.S.C. § 1228, and the Department of Homeland
5  Security ("DHS") detained Petitioner pursuant to 8 U.S.C. § 1231(a)(2). (ECF No. 1 at 13; ECF
6  No. 1-1 at 95; ECF No. 13 at 10.) On January 5, 2022, an asylum officer conducted a reasonable
7  fear interview, finding Petitioner was credible but had not established reasonable fear of torture
8  or persecution. (ECF No. 1 at 13.) On February 22, 2022, an immigration judge ("IJ") held a
9  Reasonable Fear Interview Review hearing and affirmed the finding of the asylum officer. (Id.)
10 Petitioner filed a petition for review in the Ninth Circuit. (ECF No. 1 at 13; ECF No. 13-1 at 3.)

11 On June 21, 2022, Petitioner had a bond hearing before an IJ and was denied bond. (ECF
12 No. 1 at 13.) On November 28, 2022, Petitioner was the victim of a data leak when U.S.
13 Immigration and Customs Enforcement ("ICE") published sensitive and confidential information
14 about detainees, including Petitioner, on their public-facing website. (Id.) Therefore, DHS
15 rescinded the final administrative removal order, and on February 1, 2023, issued a Notice to
16 Appear to begin new removal proceedings. (Id. at 13–14; ECF No. 13-1 at 3.)

17 On July 21, 2023, an IJ denied Petitioner's applications for relief from removal and
18 ordered Petitioner removed to El Salvador. (ECF No. 28 at 2; ECF No. 28-2.) On January 18,
19 2024, the Board of Immigration Appeals ("BIA") dismissed Petitioner's appeal. (ECF No. 28 at
20 2; ECF No. 28-3.) On January 22, 2024, Petitioner filed a petition for review in the Ninth Circuit,
21 and Petitioner was granted a temporary stay of removal. (ECF No. 28 at 2.) On December 5,
22 2024, the Ninth Circuit denied Petitioner's petition for review. (Memorandum Disposition,
23 E.G.C. v. Bondi, No. 24-348 (9th Cir. Dec. 5, 2024), ECF No. 49.[4]) On December 18, 2024, the

---

not been continuously residing in the United States, and there is not a right to derivative TPS through a family member." (ECF No. 13 at 9 n.1.) At minimum, "it is clear that [Petitioner] entered the United States in 1994, when he was a minor, and subsequently obtained work authorization based on a humanitarian application." (ECF No. 14-1 at 3.)

[4] The Court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (internal quotation marks and citation omitted)). See also United States v. Raygoza-Garcia, 902 F.3d 994, 1001 (9th Cir. 2018) ("A court may

1  Ninth Circuit ordered that the temporary stay of removal shall remain in place until the mandate
2  issues. (Order, E.G.C., No. 24-348 (9th Cir. Dec. 18, 2024), ECF No. 52.) On February 20, 2025,
3  Petitioner filed a petition for panel rehearing and rehearing *en banc*. (Petition, E.G.C., No. 24-
4  348 (9th Cir. Feb. 20, 2025), ECF No. 58.)

      Meanwhile, on June 26, 2023, Petitioner filed a petition for writ of habeas corpus in the United States District Court for the Northern District of California, challenging his prolonged immigration detention. (ECF No. 1.) On July 21, 2023, Respondent filed an answer. (ECF No. 13.) On August 3, 2023, Petitioner filed a traverse. (ECF No. 14.) On June 6, 2024, the parties filed supplemental briefs addressing Doe v. Becerra, 732 F. Supp. 3d 1071 (N.D. Cal. 2024). (ECF Nos. 26, 27.) On August 28, 2024, the United States District Court for the Northern District of California issued an order transferring the petition to this Court in light of Doe v. Garland, 109 F.4th 1188 (9th Cir. 2024). (ECF No. 35.)

      On September 16, 2024, this Court granted Petitioner leave to file a motion to amend the petition to name a proper respondent. (ECF No. 41.) On September 26, 2024, Petitioner filed a motion to amend the petition to name the correct respondent. (ECF No. 42.) On November 12, 2024, Respondent filed a motion to dismiss. (ECF No. 51.) On February 4, 2025, the Court granted Petitioner's motion to amend and granted in part and denied in part Respondent's motion to dismiss. (ECF No. 53.)

## II.

## DISCUSSION

### A. Immigration Detention Statutes and Bond Hearings

      Congress has enacted a complex statutory scheme governing the detention of noncitizens during removal proceedings and following the issuance of a final order of removal. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the

---

take judicial notice of undisputed matters of public record, which may include court records available through PACER."); Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.").

necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). Here, Petitioner is detained pursuant to 8 U.S.C. § 1226(c),[5] which provides:

> (c) Detention of criminal aliens
>
> (1) Custody
>
> The Attorney General shall take into custody any alien who--
>
> > (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
> >
> > (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
> >
> > (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[1] to a term of imprisonment of at least 1 year, or
> >
> > (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
>
> (2) Release
>
> The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C. § 1226(c).

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the

---

[5] The Ninth Circuit has "conclude[d] that Subsection C applies throughout the administrative and judicial phases of removal proceedings." Avilez v. Garland, 69 F.4th 525, 535 (9th Cir. 2023).

government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." Prieto–Romero, 534 F.3d at 1062 (citing Zadvydas, 533 U.S. at 684–86). The Supreme Court held that § 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. Thus, after a presumptively reasonable detention period of six months, a noncitizen was entitled to release if "it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. at 701.

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court rejected a facial challenge to mandatory detention under 8 U.S.C. § 1226(c). The Supreme Court upheld its "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." Id. at 526. The Supreme Court distinguished Zadvydas by emphasizing that mandatory detention under § 1226(c) has "a definite termination point" and "in the majority of cases it lasts for less than the 90 days . . . considered presumptively valid in Zadvydas." Id. at 529. However, Justice Kennedy specifically noted that "a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Demore, 538 U.S. at 532 (Kennedy, J., concurring).

"In a series of decisions, the [Ninth Circuit] . . . grappled in piece-meal fashion with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing." Rodriguez v. Hayes (Rodriguez I), 591 F.3d 1105, 1114 (9th Cir. 2010). This culminated in Rodriguez v. Robbins (Rodriguez III), 804 F.3d 1060 (9th Cir. 2015), in which the Ninth Circuit held that for noncitizens detained under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), "the government must provide periodic bond hearings every six months so that noncitizens may challenge their continued detention as 'the period of . . . confinement grows.'" 804 F.3d at 1089 (quoting Diouf v. Napolitano (Diouf II), 634 F.3d 1081, 1091 (9th Cir. 2011)). Importantly, the Ninth Circuit

applied the canon of constitutional avoidance to interpret these immigration detention provisions as providing a *statutory* right to a bond hearing once detention become prolonged. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1195 (9th Cir. 2022).

In Jennings v. Rodriguez, 583 U.S. 281 (2018), the Supreme Court found the Ninth Circuit's interpretation that § 1226(c) included "an implicit 6–month time limit on the length of mandatory detention" fell "far short of a 'plausible statutory construction,'" and held that the Ninth Circuit misapplied the constitutional avoidance canon to find a statutory right under 8 U.S.C. § 1226(a) to "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." Jennings, 583 U.S. at 304, 296, 306. The case was remanded to the Ninth Circuit "to consider [the] constitutional arguments on their merits." Id. at 312. The Ninth Circuit likewise remanded the case to the district court to consider the constitutional arguments in the first instance but observed that it had "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the arbitrary deprivation of liberty would have thought so." Rodriguez v. Marin, 909 F.3d 252, 255, 256 (9th Cir. 2018).

There has been "a dearth of guidance regarding the point at which an individual's continued mandatory detention under Section 1226(c) becomes unconstitutional." Gonzalez v. Bonnar, No. 18-cv-05321-JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019). See Rodriguez Diaz, 53 F.4th at 1201, 1203 (observing that "it remains undetermined whether the Due Process Clause requires additional bond procedures under *any* immigration detention statute," and noting that both the Ninth Circuit "and the Supreme Court have repeatedly declined to decide constitutional challenges to bond hearing procedures in the immigration detention context"). The Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1226(c), but it has recognized that "district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods under § 1226(c)" based on due process and noted that "[a]ccording to one such court order, the 'prolonged mandatory detention pending removal proceedings, without

1  a bond hearing, will—at some point—violate the right to due process.'" Martinez v. Clark, 36

2  F.4th 1219, 1223 (9th Cir. 2022) (citation omitted), vacated on other grounds, 144 S. Ct. 1339

3  (2024).

### B. Due Process Clause of the Fifth Amendment

"The Due Process Clause of the Fifth Amendment mandates that '[n]o person shall . . . be deprived of life, liberty, or property, without due process of law.'" United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (quoting U.S. Const. amend. V). "The Due Process Clause 'protects individuals against two types of government action': violations of substantive due process and procedural due process." Id. (quoting United States v. Salerno, 481 U.S. 739, 746 (1987)). "[S]ubstantive due process prevents the government from engaging in conduct that shocks the conscience, or interferes with rights implicit in the concept of ordered liberty." Salerno, 481 U.S. at 746 (internal quotation marks and citations omitted). "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. This requirement has traditionally been referred to as 'procedural' due process." Salerno, 481 U.S. at 746 (citation omitted).

   1. Procedural Due Process

Petitioner contends that "[i]mmigration detention that exceeds six months is prolonged, and therefore presumptively unconstitutional without an individualized hearing." (ECF No. 1 at 23.) Petitioner notes that "[c]ourts that have declined to apply a bright-line rule consider procedural due process challenges to section 1226(c) detention under the Supreme Court's longstanding *Mathews v. Eldridge* test." (Id. at 25.) Respondent asserts that Petitioner's detention does not violate his right to procedural due process and "[e]ven assuming without conceding that *Mathews* applies here, it would not result in an additional hearing." (ECF No. 13 at 27.)

Courts in the Ninth circuit have taken a variety of approaches to determine whether due process requires a bond hearing in a particular case. See, e.g., Rodriguez v. Nielsen, No. 18-cv-04187-TSH, 2019 WL 7491555, at *6 (N.D. Cal. Jan. 7, 2019) (applying a bright-line rule "detention becomes prolonged after six months and entitles [the petitioner] to a bond hearing"); Banda v. McAleenan, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019) (considering six factors,

which include: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal"); Juarez v. Wolf, No. C20-1660-RJB-MLP, 2021 WL 2323436, at *4 (W.D. Wash. May 5, 2021) (considering, in addition to six factors set forth above, "whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable" and "the nature of the crimes the petitioner committed"), report and recommendation adopted, 2021 WL 2322823 (W.D. Wash. June 7, 2021); Lopez v. Garland, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) (considering "the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government").

There are also some courts that apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Zagal-Alcaraz v. ICE Field Off., No. 3:19-cv-01358-SB, 2020 WL 1862254, at *3–4 (D. Or. Mar. 25, 2020) (collecting cases), report and recommendation adopted, 2020 WL 1855189 (D. Or. Apr. 13, 2020). In Rodriguez Diaz, which concerned a noncitizen detained pursuant to 8 U.S.C. § 1226(a) and whether "continued detention was unconstitutional because under the Due Process Clause of the Fifth Amendment, he is entitled to a second bond hearing at which the government bears the burden of proof by clear and convincing evidence," the panel majority "assume[d] without deciding" that the Mathews test applied, noting that the Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings," and finding "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F.4th at 1193, 1206. Similarly, the dissent "agree[d] that the test developed in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), is the appropriate legal framework to determine whether there was a due process violation." Rodriguez Diaz, 53 F.4th at 1219 (Wardlaw, J., dissenting). See also Black v. Decker, 103 F.4th 133, 147 (2d Cir. 2024) ("conclud[ing] that due process challenges to prolonged detention under section 1226(c) should also be reviewed under *Mathews*"). Some courts look to whether the petitioner is requesting an

1 initial bond hearing or a second bond hearing in deciding whether to apply the Mathews test

2 because "[w]hile the Mathews factors may be well-suited to determining whether due process

3 requires a second bond hearing, they are not particularly dispositive of whether prolonged

4 mandatory detention has become unreasonable in a particular case." Djelassi v. ICE Field Office

5 Dir., No. C19-491-RSM, 2020 WL 263670, at *2 (W.D. Wash. Jan. 17, 2020) (quoting Banda,

6 385 F. Supp. 3d at 1118).

7 Given that the parties have addressed the Mathews test in their pleadings and the fact that

8 Petitioner is seeking a second bond hearing, the Court will apply the Mathews test in addition to

9 addressing the bright-line rule and whether Demore precludes relief.

### a. Demore

To the extent Respondent argues that Demore forecloses relief, the Court finds the Second Circuit's decision in Black v. Decker, 103 F.4th 133 (2d Cir. 2024), instructive. As set forth above, the Supreme Court rejected a *facial* challenge to mandatory detention under 8 U.S.C. § 1226(c) in Demore,[6] upholding its "longstanding view that the Government may constitutionally detain deportable aliens during the *limited* period necessary for their removal proceedings."[7] 538 U.S. at 526 (emphasis added). Demore "said nothing about whether due process may *eventually* require a hearing." Black, 103 F.4th at 149 (emphasis in original).

> If *Demore* had, in fact, foreclosed the due process challenge now before us, the *Jennings* Court would have had no reason to remand to the Ninth Circuit "to consider . . . in the first instance" the

---

[6] See Demore, 538 U.S. at 514 ("Respondent . . . filed a habeas corpus action pursuant to 28 U.S.C. § 2241 . . . challenging the constitutionality of § 1226(c) *itself*." (emphasis added)); Black, 103 F.4th at 150 n.23 (noting that in Demore "the length of . . . detention was not at issue—only 'the constitutionality of § 1226(c) itself.'" (citing Demore, 538 U.S. at 514, 530–31)).

[7] Demore noted that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal," relying on statistics from the Executive Office for Immigration Review ("EOIR"). 538 U.S. at 530. However, "[t]hirteen years after the decision in Demore, the government admitted that the figures it provided to the Court, and which the Court relied on, contained 'several significant errors,'" and for the years 1999–2001, the "average length of detention in cases where the alien appealed [was] 382 days, or a little more than a year." Rodriguez v. Nielsen, No. 18-CV-04187-TSH, 2019 WL 7491555, at *5 (N.D. Cal. Jan. 7, 2019) (citations omitted). "The data from the Jennings case show that 460 members of the respondent section 1226(c) subclass were detained for an average of 427 days (over fourteen months) with some individual detention periods exceeding four years." Id. (citation omitted). The Government Accountability Office conducted a study and "found that as of 2015, the median length of time it takes the BIA to complete an appeal of a removal order exceeds 450 days." Id. (citation omitted).

> detainees' argument that "[a]bsent . . . a bond-hearing requirement, . . . [section 1226(c)] would violate the Due Process Clause of the Fifth Amendment."

Black, 103 F.4th at 149 (quoting Jennings, 583 U.S. at 291, 312). Accordingly, the Court finds that Demore does not necessarily preclude relief.

### b. Bright-Line Rule

The First, Second, and Third Circuits have "reject[ed] a bright-line constitutional rule requiring a bond hearing after six months of detention—or after any fixed period of detention—in the context of a Congressional mandate, in the immigration context, to detain." Black, 103 F.4th at 150 (citing Reid v. Donelan, 17 F.4th 1, 7–9 (1st Cir. 2021); German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 211 (3d Cir. 2020)). The Court finds such authority persuasive and declines to adopt a bright-line rule that detention without a bond hearing is presumptively unconstitutional when it exceeds six months.

### c. Mathews Test

In Mathews, the Supreme Court held that "identification of the specific dictates of due process generally requires consideration of three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

#### i. Private Interest

With respect to the first factor, the Court finds that the private interest at issue here is fundamental. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. The Ninth Circuit has held that it "is beyond dispute" an immigration detainee's "private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80

10

(1992)). See Rodriguez Diaz, 53 F.4th at 1207 ("We have also held, more generally, that an individual's private interest in 'freedom from prolonged detention' is 'unquestionably substantial.' . . . Rodriguez Diaz has a legitimate and reasonably strong private liberty interest under *Mathews*." (quoting Singh, 638 F.3d at 1208)).

The Court is cognizant that "it is important not to overstate the strength of [Petitioner]'s showing under the first *Mathews* factor," and that "under the first prong of the *Mathews* analysis, we cannot simply count his months of detention and leave it at that." Rodriguez Diaz, 53 F.4th at 1207, 1208. The Court has considered that Petitioner has received one bond hearing before an IJ and acknowledges his "private interests are further diminished by the fact that he is subject to an order of removal from the United States." Id. at 1208.

Based on the foregoing, the Court finds that the first Mathews factor weighs in favor of Petitioner.

      *ii. Risk of Erroneous Deprivation*

With respect to the second factor, the Court considers the risk of erroneous deprivation of Petitioner's liberty interest and the probable value of additional procedural safeguards. "In evaluating the risk of erroneous deprivation in the context of noncitizen detention, the Ninth Circuit has looked to whether the detainee has a statutory right to procedural protections, such as individualized custody determinations and the right to seek additional bond hearings throughout detention." Jensen v. Garland, No. 5:21-cv-01195-CAS (AFM), 2023 WL 3246522, at *6 (C.D. Cal. May 3, 2023) (citing Rodriguez Diaz, 53 F.4th at 1209–10 (finding a small risk of erroneous deprivation where petitioner was detained under § 1226(a) and thus received numerous procedural protections, including individualized custody determinations and right to seek additional bond hearings)).

On December 28, 2021, ICE conducted a custody review pursuant to Fraihat v. U.S. Immigr. & Customs Enf't, 445 F. Supp. 3d 709 (C.D. Cal. 2020), vacated, 2022 WL 20212706 (C.D. Cal. Sept. 16, 2022).[8] ICE concluded that detention was warranted. (ECF No. 13 at 12;

---

[8] The district court "certified two nationwide classes and issued a preliminary injunction that applied to all immigration detention facilities in the United States. The injunction imposed a broad range of obligations

1  ECF No. 13-1 at 3.) On February 8, 2022, ICE conducted another custody review pursuant to
2  Fraihat and concluded that continued detention was warranted based on Petitioner's risk to
3  public safety. (Id.) On June 21, 2022, Petitioner had an individualized bond hearing before an IJ
4  pursuant to Aleman Gonzalez v. Barr, 955 F.3d 762 (9th Cir. 2020), rev'd and remanded,
5  Garland v. Aleman Gonzalez, 596 U.S. 543 (2022),[9] where the government had the burden of
6  establishing by clear and convincing evidence that Petitioner posed a danger to the community or
7  a flight risk if released. (ECF No. 1 at 13; ECF No. 13 at 11; ECF No. 13-1 at 3.) At the hearing,
8  Petitioner presented evidence regarding his ties to the community and his rehabilitation. ((ECF
9  No. 1 at 13.) The IJ found Petitioner a danger to the community and denied bond. (ECF No. 1 at
10 13; ECF No. 13 at 11; ECF No. 13-1 at 3–4, 39.) Petitioner had the right to appeal that decision
11 to the BIA, and to the extent the agency made errors of law in denying Petitioner's request for
12 release on bond, the decision "would also be subject to judicial review in habeas." Rodriguez
13 Diaz, 53 F.4th at 1210.

14     Like the petitioner in Rodriguez Diaz, the determination to detain Petitioner "was subject
15 to numerous levels of review, each offering [Petitioner] the opportunity to be heard by a neutral
16 decisionmaker. These procedures ensured that the risk of erroneous deprivation would be
17 'relatively small.'" Rodriguez Diaz, 53 F.4th at 1210 (quoting Yagman v. Garcetti, 852 F.3d 859,
18 865 (9th Cir. 2017)).

19     On the other hand, Petitioner is now detained under § 1226(c) and thus, does not have a
20 statutory right to a bond hearing or the right to seek additional bond hearings. As additional
21 procedures are not mandated under § 1226(c), the risk of erroneous deprivation as Petitioner's
22 time in detention lengthens is not insignificant. Moreover, it has been thirty-two months since

---

on the federal government, including ordering ICE to identify and track detainees with certain risk factors that the district court identified; requiring ICE to issue a comprehensive Performance Standard covering a myriad of COVID-19-related topics, such as social distancing and cleaning policies; and setting directives for releasing detainees from custody altogether." Fraihat v. U.S. Immigr. & Customs Enf't, 16 F.4th 613, 618 (9th Cir. 2021).

[9] The district court certified a class of individuals who were subject to final removal orders and were detained pursuant to 8 U.S.C. § 1231(a)(6) and issued a preliminary injunction that "require[d] a bond hearing before an IJ after six months of detention for an alien whose release or removal is not imminent" where the government bore "a clear and convincing burden of proof at such a bond hearing to justify an alien's continued detention." Aleman Gonzalez, 955 F.3d at 766.

Petitioner's first bond hearing, and since then Petitioner has "completed dozens of additional programs, including courses such as 'advanced interpersonal communication,' 'adapting to change,' and 'anger management.'" (ECF No. 1 at 40.) Petitioner also enrolled in new substance abuse programs and has continued to attend bible study sessions. (ECF No. 14-1 at 3.) Thus, there is value in an additional bond hearing after almost three years of detention with new developments regarding Petitioner's rehabilitation efforts.

Again, the Court is cognizant that it should not overstate the strength of Petitioner's showing here. As noted above, Petitioner already had one bond hearing before an IJ where the government bore the burden of establishing by clear and convincing evidence detention was warranted. Additionally, in light of Petitioner's criminal history[10] and the finding of dangerousness by an IJ given Petitioner's 2017 conviction for rape of a minor, it is not certain that consideration in a new bond hearing of Petitioner's completion of programs on communication, anger management, and substance abuse would result in a different detention determination.[11]

Based on the foregoing, the Court finds that the second Mathews factor weighs in favor of Petitioner.

      *iii.    Government's Interest*

With respect to the third and final factor, the Court recognizes that "the government clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in

---

[10] On September 1, 1999, Petitioner was convicted of driving without a license and sentenced to twelve months of probation and five days imprisonment. (ECF No. 13 at 9.) On July 20, 2009, Petitioner was convicted of driving without a license and failure to appear for a traffic violation. (Id.) On June 24, 2002, Petitioner was convicted of driving under the influence of alcohol and sentenced to thirty-six months of probation and thirteen days imprisonment. (Id.) On August 20, 2004, Petitioner was convicted of driving under the influence of alcohol and willful cruelty to a child and sentenced to forty-eight months of probation and thirty days imprisonment. (ECF No. 13 at 10.) On September 14, 2014, Petitioner was convicted of driving with a suspended license and sentenced to thirty-six months of probation and 120 days imprisonment. (Id.) On June 2, 2017, Petitioner was convicted of forcible rape on a child victim over fourteen years and sentenced to seven years imprisonment. (Id.)

[11] Counsel for Petitioner claims that Petitioner has not consumed alcohol or drugs since June 2016. (ECF No. 1-1 at 3.) Petitioner forcibly raped a minor in 2017. (ECF No. 1 at 9; ECF No. 13-1 at 31.). As noted by Respondent, Petitioner was approximately forty years old when he committed that offense, and "[t]hat Petitioner raped a minor while not drinking or on drugs undermines any claim that his purported abstinence from alcohol or drugs renders him non-dangerous." (ECF No. 27 at 5.)

13

violation of our law'" and "has an obvious interest in 'protecting the public from dangerous criminal aliens.'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore, 538 U.S. at 518, 515). The Ninth Circuit has stated that "[t]hese are interests of the highest order that only increase with the passage of time," noting that "[t]he longer detention lasts and the longer the challenges to an IJ's order of removal take, the more resources the government devotes to securing an alien's ultimate removal" and "[t]he risk of a detainee absconding also inevitably escalates as the time for removal becomes more imminent." Rodriguez Diaz, 53 F.4th at 1208.

However, it is important to stress that "the governmental issue at stake [here] is the ability to detain Petitioner *without providing him with another bond hearing*, not whether the government may continue to detain him." Lopez Reyes v. Bonnar, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019) (emphasis in original). See Zerezghi v. U.S. Citizenship & Immigr. Servs., 955 F.3d 802, 810 (9th Cir. 2020) (noting that "the question [under the third Mathews factor] is *not* the government's interest in immigration enforcement" "in general" (emphasis added)); Henriquez v. Garland, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022) ("Although the Government has a strong interest in enforcing the immigration laws and in ensuring that lawfully issued removal orders are promptly executed, the Government's interest in detaining Petitioner without providing an individualized bond hearing is low.").

Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively burdensome. See Marroquin Ambriz v. Barr, 420 F. Supp. 3d 953, 964 (N.D. Cal. 2019) (noting in context of a § 1226(a) detention, the parties did not contest "that the cost of conducting a bond hearing, to determine whether the continued detention of Petitioner is justified, is minimal"); Singh v. Barr, 400 F. Supp. 3d 1005, 1021 (S.D. Cal. 2019) (noting in the context of § 1226(a) detention that "[t]he government has not offered any indication that a [ ] bond hearing would have outside effects on its coffers").

Accordingly, the third Mathews factor weighs in favor of Petitioner.

\\\

       *iv.*    Weighing the Factors

Based on the foregoing, the Court finds that each of the Mathews factors weighs in favor of Petitioner. Accordingly, the Court finds that Petitioner is entitled to a second bond hearing.

2. Substantive Due Process

Petitioner also asserts that his "continued detention violates his substantive due process rights because his detention is excessive in relation to the government interests of preventing flight or danger to the community." (ECF No. 1 at 18.) "As an initial matter, the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment." Salerno, 481 U.S. at 746 (citing Bell v. Wolfish, 441 U.S. 520, 537 (1979)). However, "[i]t is undisputed that at some point, . . . detention can 'become excessively prolonged, and therefore punitive,' resulting in a due process violation." United States v. Torres, 995 F.3d 695, 708 (9th Cir. 2021) (quoting Salerno, 481 U.S. at 747 n.4). "The point at which detention constitutes a due process violation requires a case-by-case analysis." Torres, 995 F.3d at 708 (citing United States v. Gelfuso, 838 F.2d 358, 359–60 (9th Cir. 1988)). "A due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose." Torres, 995 F.3d at 708 (citing Salerno, 481 U.S. at 747).

"[W]hile the existence of some threshold of per se due process violation may be 'undisputed,' it has also never been clearly delineated in the context of immigration detention." Doe v. Becerra, 704 F. Supp. 3d 1006, 1020 (N.D. Cal. 2023) (citation omitted), rev'd on other grounds, Doe v. Garland, 109 F.4th 1188 (9th Cir. 2024).

As Petitioner's second bond hearing might render his substantive due process challenge moot, the Court will hold the substantive due process challenge in abeyance pending the outcome of the bond hearing. See Doe, 704 F. Supp. 3d at 1020.

**C. Remedy**

Here, Petitioner "requests that this Court hold the evidentiary hearing itself, rather than ordering an immigration court to undertake the same inquiry." (ECF No. 1 at 43.) Petitioner also

argues that "DHS bears the burden of justifying continued confinement by clear and convincing evidence." (Id. at 44.) Respondent contends that "the appropriate relief is not immediate release, but a new bond hearing before an IJ (not a bail hearing before this Court)," noting that "[c]ircuit courts that have evaluated pre-order detentions (pre-*Jennings*) have determined that an IJ bond hearing is the appropriate remedy for unreasonably prolonged detention." (ECF No. 13 at 29.)

"The Court finds, consistent with other post-Jennings cases, that the appropriate remedy is a bond hearing before an immigration judge[.]" Lopez, 631 F. Supp. 3d at 882. See Martinez Leiva v. Becerra, No. 23-cv-02027-CRB, 2023 WL 3688097, at *9 (N.D. Cal. May 26, 2023) ("The Court further concludes that the appropriate remedy here is a bond hearing, and that an IJ, not the Court, should conduct it[.]" (footnote omitted)); Mansoor v. Figueroa, No. 3:17-cv-01695-GPC (NLS), 2018 WL 840253, at *4 (S.D. Cal. Feb. 13, 2018) ("The Court finds the IJ is uniquely qualified and situated to make neutral administrative determinations about Petitioner's eligibility for release on bond and/or placement in a supervised release program such as ISAP.").

The Court now turns to the burden of proof at the bond hearing and which party should bear such burden. Petitioner argues that the government must bear the burden of proof by clear and convincing evidence, citing to Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011). (ECF No. 1 at 44.) Respondent contends that "if the Court determines that an additional bond hearing before an IJ is required, Petitioner should bear the burden in accordance with statute, the Constitution, and the Ninth Circuit's decision in *Rodriguez Diaz*." (ECF No. 13 at 30.)

Having "previously applied the canon of constitutional avoidance to interpret . . . immigration provisions—8 U.S.C. §§ 1225(b), 1226(c), and 1231(a)(6)—as providing a statutory right to a bond hearing once detention becomes prolonged," the Ninth Circuit in Singh "concluded that for these hearings to comply with due process, the government had to bear the burden of proving by clear and convincing evidence that the alien poses a flight risk or a danger to the community." Rodriguez Diaz, 53 F.4th at 1196 (citing Singh, 638 F.3d at 1203–05). Although Rodriguez Diaz may have declined to impose the standard articulated in Singh, the panel majority specifically stated that it was not "decid[ing] whether Singh remains good law in any respect following Jennings" and even recognized that Singh was based "on general

16

principles of procedural due process, reasoning that a detained person's liberty interest is substantial." Rodriguez Diaz, 53 F.4th at 1202 n.4, 1199. Additionally, the Ninth Circuit has suggested post-Jennings that Singh remains good law in Martinez v. Clark, which took "no position" on "[w]hether due process requires a bond hearing for aliens detained under § 1226(c)," but did address "the scope of federal court review of those bond determinations" and found with respect to a bond hearing for a noncitizen detained under § 1226(c) that "the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community." Martinez, 36 F.4th at 1223, 1231. On remand, and after Rodriguez Diaz was decided, the Martinez panel reconfirmed "that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community" and "that the BIA applied the correct burden of proof." Martinez v. Clark, 124 F.4th 775, 785, 786 (9th Cir. 2024).

The Court will follow the "overwhelming majority of courts that have held that the government must justify the continued confinement of a non-citizen detainee under § 1226(c) by clear and convincing evidence that the non-citizen is a flight risk or a danger to the community," Sanchez-Rivera, 2023 WL 139801, at *7, even post-Rodriguez Diaz. See, e.g., Black, 103 F.4th at 138 ("[T]he district court properly required the government to show at such a bond hearing, by clear and convincing evidence, the necessity of his continued detention. It further correctly directed the immigration judge ("IJ"), in setting his bond and establishing appropriate terms for his potential release, to consider his ability to pay and alternative means of assuring appearance."); Pham v. Becerra, 717 F. Supp. 3d 877, 888 (N.D. Cal. 2024); J.P. v. Garland, 685 F. Supp. 3d 943, 949 (N.D. Cal. 2023).

In the event Petitioner is determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond, the IJ should consider Petitioner's financial circumstances or alternative conditions of release. See Hernandez, 872 F.3d at 1000; Black, 103 F.4th at 138. Additionally, given that the bond hearing before the IJ "may bear upon the future disposition of [Petitioner]'s writ petition, the bond hearing must be transcribed." Doe, 704 F. Supp. 3d at 1019.

# III.

# ORDER

Accordingly, the Court HEREBY ORDERS that:

1. Petitioner's second claim for relief (procedural due process) is GRANTED;
2. Within **FOURTEEN (14) days** of the date of service of this order, Respondent shall provide Petitioner with an individualized bond hearing before an immigration judge at which
   a. "the government must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community to justify denial of bond," Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011);
   b. the IJ should consider Petitioner's financial circumstances or alternative conditions of release in the event Petitioner is determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond; and
3. The hearing and the IJ's decision (if rendered orally) shall be transcribed.

IT IS SO ORDERED.

Dated:  **March 4, 2025**                    /s/ Erica P. Grosjean
                                              UNITED STATES MAGISTRATE JUDGE

18